## HIRSCH v. THE STATE.

1. CRIMINAL LAW. *Witness may answer.* *When.* Hirsch was summoned before the grand jury to give evidence for unlawful gaming. He was asked if he knew of any persons playing at cards for a wager in the county within six months. He did not object to the form of the question, but refused to answer, because he said he could not answer without criminating himself. The court hold—that as he could not be indicted or prosecuted for any matter he might, in answer to the question, disclose criminating himself, he was bound to answer the question.

Code cited. Secs. 3823, 5087–88–89.

2. SAME. *Question reserved.* Whether the judgment of the court, ordering the witness to jail for refusing to answer the question, could be appealed from.

FROM GREENE.

Appeal from the Circuit Court. E. E. GILLEN-WATERS, Judge.

MYERSALL, PETTIBONE and ROBINSON for Hirsch.

ATTORNEY-GENERAL HEISKELL for the State.

SNEED, J., delivered the opinion of the court.

The defendant appeared before the grand jury of Greene county under subpœna, at the October term, 1874, of the circuit court of said county, to testify as to violations of the laws to suppress unlawful gaming. He was regularly summoned by the grand jury under the inquisitorial powers conferred by statute upon that body, to inquire generally as to said offense, and to

make presentment thereof upon the testimony of witnesses summoned and examined before them. The defendant was asked the question if he knew of any persons playing at cards for a wager within the last six months in said county. The question was not in proper form, but was not objected to on this account. Code, sec. 5088. The defendant, however, refused to answer upon the ground that if he make any disclosures upon the subject, he would be obliged in criminating others, also to criminate himself. He was then brought before the court, and the statute was read to him which exempts witnesses from prosecution for offenses as to which they have given testimony before the grand jury. The defendant still refused to answer, and thereupon the court pronounced judgment of imprisonment upon him for thirty days in the county jail.

The inquisitorial power as to violations of the laws to suppress gaming was first conferred upon the grand jury in this State by the act of 1825, ch. 5, sec. 2, which required the grand jury to send for witnesses whenever they or any of them suspect a violation of the laws against gaming. Code, sec. 5087. The vice was of such general prevalence, and so often baffled detection because of the fact that gamblers and persons haunting gaming houses, could alone, as a general thing, give information thereof, the Legislature in its anxiety to extirpate the vice, passed the act of 1829, ch. 31, sec. 2, and 1841, ch. 5, sec. 2, which forbade the indictment or prosecution of any witness for any offense as to which he has testified before the grand

jury.   Code, sec. 5089.   This enactment was intended expressly to obviate the constitutional inhibition against compelling a witness to criminate himself.   The language of our State constitution is, that he shall not be compelled to give evidence against himself.   Art. 9.   That of the Federal constitution is, that he shall not be compelled in any criminal case to be a witness against himself.   Con. U. S., art. 5, Am.   The sense of these provisions as we understand them is embodied in the language of the common law writers upon the subject as thus reiterated in 1 Phil. Ev., 206: "the law is that a witness shall not be compelled to answer any question which subjects him to a penalty or punishment, or criminal charge."   The provision of the constitution in this respect is but an affirmance, says Mr. Story, of a common law privilege.   But it is of inestimable value.   "It is well known," he continues, "that in some countries, not only are criminals compelled to give evidence against themselves, but are subjected to the rack or torture in order to procure a confession of guilt."   2 Story Con., sec. 1788.   Now, the statute in question cannot be properly denominated a statutory pardon, because the Legislature has not the power to pardon public offenses.   But they have complete power as to the creation and punishment of public offenses, and may create new ones or abrogate old ones at pleasure, if there be no constitutional inhibition to the contrary.   Having thus the supreme control of the police powers of the State, it was certainly competent for the Legislature to pass such laws as might be necessary to enforce them with energy

and vigor. The exemption of the witness from prosecution for any offense whereof he gives evidence before the grand jury was, as to him, an abrogation of the offense. He could neither be accused by another nor could he accuse himself, and therefore he could not criminate himself by such testimony. The answer to the question did not subject him to "any penalty or punishment or criminal charge," because he could not be lawfully arraigned or accused of the matter whereof he testifies. It results that the judgment must be affirmed, with the modification that the defendant be imprisoned for thirty days, or until, if again called by the grand jury, he agrees to answer the question when propounded in legal form. Code, sec. 3823. It is insisted by the Attorney General that the contempt being committed in presence of the court, the defendant had no right of appeal from the judgment. How this may be we do not undertake now to decide, as the main question is decisive of the case.

With the modification indicated, let the judgment be affirmed.

NICHOLSON, C. J., and TURNEY, J., dissented as follows:

We dissent from the opinion of the court in this case for the following reasons:

We concur in the opinion that the right to refuse to give testimony that will or may criminate a witness is protected by the constitution, and that it is of inestimable value.

We conceded that the Legislature, in the exercise of its police power, can enact measures for the vigorous enforcement of the laws for the suppression of the vice of gaming, and that they had the right to exempt from prosecution those witnesses who might testify as to offenses committed by themselves.

We agree that when a witness has so testified the law abrogates the offense as to him so far that he cannot afterwards be prosecuted. But we do not concur in the conclusion drawn from these premises, that the Legislature intended, or that they could, if they had so intended, to deprive the witness of his constitutional right to refuse to give evidence as to his own criminality. We hold that the law does not abrogate the offense until the witness has testified, but that after the witness has testified, the law then virtually operates to abrogate it and shield him from prosecution. The act of testifying constitutes the abrogation of the offense under the law. This only occurs after the witness has voluntarily waived his constitutional right to refuse to testify. If he does not voluntarily waive his right, he cannot be deprived of it by a compulsory law.

Considering, therefore, the several positions laid down in the opinion of the majority of the court, we respectfully dissent from their conclusions, and concur with the diction of Judge McHenry in *State* v. *Hatfield*, 3 Head, 232, in which he says: "the witness cannot be compelled to testify against himself, but as an inducement to a full and unrestrained disclosure in regard to others, without hurt to himself, it was

deemed politic, in the event of his doing so, to exempt him from prosecution."

On application to re-open SNEED, J., said:

We have considered the argument presented in support of an application to have this case re-opened and re-argued. We adhere to the doctrine of the opinion heretofore delivered, that no person criminates himself in the sense of the constitution, unless he accuses himself of some public offense for which he must suffer a penalty. There being no such accusation possible in this case, there is no crimination.

Dismiss the petition.